IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00914-SBP

KERRI SHEEHY, DEAN BEACOM, and
TAYLOR ARCHULETA, on their own behalf
and on behalf of all others similarly situated,

        Plaintiffs,

v.

INTERMOUNTAIN HEALTH CARE, INC.,

        Defendant.

## FIRST AMENDED COMPLAINT

Plaintiffs, by and through undersigned counsel, on their own behalf and on behalf of all others similarly situated, file this First Amended Complaint against the above-named Defendant.

## STATEMENT OF THE CASE

1. Defendant is a large health care organization that operates four hospitals and numerous other facilities in Colorado. Defendant employs thousands of hourly health care and other workers.

2. Defendant failed to include holiday incentive pay in its calculation of its employees' overtime rates, and it took a credit toward overtime compensation to which Defendant was not entitled.

3. Defendant thus violated the Colorado Minimum Wages of Workers Act, C.R.S. § 8-6-101 *et seq.*, as implemented by the Colorado Overtime and Minimum Pay Standards Order ("COMPS"), 7 CCR 1103-1.

1

4. Defendant also violated the Colorado Wage Claim Act ("CWCA"), C.R.S. §§ 8-4-101, *et seq.*, which requires employers to timely pay their employees all earned, vested and determinable wages and imposes penalties on employers who do not tender wages due upon receipt of a written demand for such wages.

5. Plaintiffs seek, on their own behalf and on behalf of all others similarly situated, actual damages, penalties, pre- and post-judgment interest, attorney fees and costs, and all other relief legally or equitably permissible and that the Court deems just and proper, as detailed in the Prayer for Relief, for Defendant's violations of Colorado wage law.

6. Plaintiff Kerri Sheehy also asserts individual claims against Defendant under the Colorado Equal Pay for Equal Work Act ("CEPEWA") on account of Defendant's decision to pay her male counterpart a substantially higher wage rate for performing substantially similar work to Ms. Sheehy. Ms. Sheehy seeks actual damages, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs, and all other relief legally or equitably permissible and that the Court deems just and proper (including an adjusted wage rate moving forward), as detailed in the Prayer for Relief, for Defendant's violation of Colorado's equal pay laws.

## PARTIES

7. Plaintiff Kerri Sheehy has been employed by Defendant as an hourly nurse since approximately June 2022 through the present and is domiciled in Colorado.

8. Plaintiff Dean Beacom has been employed by Defendant as an hourly nurse since approximately 2011 through the present and is domiciled in Colorado.

9. Plaintiff Tayor Archuleta has been employed by Defendant as an hourly nurse since approximately August 2020 through the present and is domiciled in Colorado.

10. Defendant Intermountain Health, Inc. ("Intermountain") is a registered foreign nonprofit corporation with its principal office street address at 36 South State Street, Suite 2200, Salt Lake City, UT 84111. At all pertinent times, Intermountain has been registered to do business in the State of Colorado and has done business in the state, with its registered agent located in Brighton, Colorado.

## JURISDICTION & VENUE

11. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties. Specifically, while the three plaintiffs are domiciled in Colorado, Intermountain is incorporated in and has its principal place of business in Utah. Further, the amount in controversy exceeds $75,000.

12. This Court also has jurisdiction over this matter under the Class Action Fairness Act, pursuant to 28 U.S.C. § 1332(d) because there are at least 100 class members in the proposed class, the combined claims of all class members exceeds $5 million, and minimum diversity exists. 28 U.S.C. § 1332(d)(2), (d)(5)(B), and 1453(a).

13. Venue is proper pursuant to 1391(b)(2) because all of the acts or omissions giving rise to these claims arose from transactions conducted in this District.

14. This Court has personal jurisdiction over the parties. Defendant is registered to do business in the State of Colorado and transacts business, maintains substantial contacts, and/or committed the acts giving rise to this lawsuit in Colorado.

15. Jurisdiction supporting claims for attorneys' fees and costs is conferred by, at a minimum, C.R.S. § 8-5-104(2)(b) and C.R.S. § 8-4-110.

## FACTUAL ALLEGATIONS

3

**A.     Class Wage Claims**

16.     Defendant employed Plaintiffs and those similarly situated in hourly health care and other positions in Defendant's four hospitals and multiple other facilities around Colorado.

17.     Contrary to law, Defendant failed to include holiday shift differential payments when it calculated its employees' overtime hourly rates.

18.     In fact, it is Defendant's stated, company-wide, and unlawful policy that "[s]ince premiums are compensated at one and one half times an associate's base hourly rate they do not apply towards the adjusted rate calculation of overtime" and that "Holiday Premium Pay will not be included in the adjusted rate calculation for overtime."

19.     Defendant also unlawfully took a credit against the overtime hours due to its hourly employees by deducting from the total of overtime hours due those hours worked at the holiday premium rate.

20.     For example, during the December 22, 2024 through December 28, 2024 workweek, Plaintiff Sheehy worked a total of 49.77 hours, but was only paid 1.76 hours of overtime because Defendant took a credit against its overtime payment obligations for the holiday premium hours Plaintiff worked on Christmas day.

21.     Defendant uniformly subjected all its hourly employees to the same policies and practices of non-inclusion of holiday premium pay in the calculation of the overtime rate, and of taking an unlawful credit against overtime hours accumulated and due.

22.     At all times relevant Defendant employed persons, including Plaintiffs and the Members of the Class they seek to represent, within the State of Colorado.

23.     At all times relevant to this action, Plaintiffs and all others similarly situated

4

performed labor for the benefit of Defendant wherein Defendant commanded when, where, and how much labor Plaintiffs and others were to perform.

### i. Rule 23 Class Allegations – Overtime Class

24. Plaintiffs assert their First and Second Claims, brought under (1) the Colorado Minimum Wages of Workers Act, C.R.S. § 8-6-101 *et seq.*, as implemented by the COMPS Order, and (2) under the Colorado Wage Claim Act ("CWCA"), C.R.S. § 8-4-101, *et. seq.* as a C.R.C.P. Rule 23 class action, on their own behalf and on behalf of a Class for which Plaintiffs seek certification.

25. Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the Overtime Class as follows:

> All Colorado hourly employees who worked on or after February 14, 2019 who worked overtime and holiday hours in the same workweek.

26. This action is properly brought as a class action for the following reasons:

27. All Defendant's hourly employees were subject to Defendant's policy of non-inclusion of holiday premium pay in the calculation of the overtime rate, and of taking an unlawful credit against overtime hours due. Only those who were subject to the policy are Members of the putative Class.

28. The class is so numerous that joinder of all the potential Class Members is impracticable. Plaintiffs do not know the exact size of the Class because that information is within the control of Defendant. However, Plaintiffs believe and allege that the number of Class Members is in the 10,000 – 20,000 persons range. Membership in the class is readily ascertainable from Defendant's employment records.

29. Numerous questions of law and fact regarding the liability of Defendant are common to the Class and predominate over any individual issues that may exist. Common questions of law and of fact include whether Defendant failed to include holiday premium rates in the calculation of overtime hourly rates, whether Defendant took a credit against overtime hours due for hours paid at the holiday premium rate, and whether these practices were lawful.

30. The claims asserted by Plaintiffs are typical of the claims of all of the Class Members. This is an uncomplicated case of an employer miscalculating the overtime rate and the number of overtime hours due. The claims at issue arise from a policy applicable to all Members of the Class. Each Member of the Class suffered the same violations that Plaintiffs challenge with their claims. If Defendant's policies were unlawful as applied to the representative Plaintiffs, they were unlawful as applied to the absent Members of the putative Class.

31. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging identical causes of action would not serve the interests of judicial economy.

32. The representative Plaintiffs will fairly and adequately protect the interests of the Members of the Class. Because all Class Members were subject to the same violations of law perpetrated by Defendant, the interests of absent Class Members are coincident with, and not antagonistic to, those of the representative Plaintiffs. The representative Plaintiffs will litigate the Class's claims fully.

33. The representative Plaintiffs are represented by counsel experienced in wage and hour class action litigation.

34. The prosecution of separate actions by individual Class Members would create a

risk of inconsistent or varying adjudications with respect to individual Class Members which would establish incompatible standards of conduct for Defendant.

35. Those Class Members who worked for Defendant for short periods of time have small claims that they are unlikely to bring individually. All Members of the Class have claims that are factually very similar and legally identical to Plaintiffs'. Thus, the interest of Members of the Class in individually controlling the prosecution or defense of separate actions is slight, while the broad remedial purposes of the COMPS counsel toward vindicating the rights of those employees with small claims as part of the larger Class.

36. Plaintiffs are aware that one member of the putative class has presented these claims in a separate action, albeit against a distinct Defendant.

37. Plaintiffs are aware that Dr. Fletcher Jones has filed a related case styled *Jones v. Sisters of Charity Leavenworth Health System, Inc.*, Case No. 2025CV30029 (Dist. Ct. Broomfield Co. Feb. 3, 2025). *See,* ECF# 16, Notice of Related Case. While Plaintiff Jones purports to represent a class overlapping that which Plaintiffs allege here, Dr. Jones has not been certified to represent such a class.

38. This class action will not be difficult to manage due to the uniformity of claims among the Class Members and the susceptibility of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

39. The contours of the Class will be easily defined by reference to payroll documents that Defendant was legally required to create and maintain. 7 CCR 1103-1 (7.1); 29 C.F.R. § 516.2. Notice will be easily distributed because all Members of the putative Class are or were recently employed by Defendant and Defendant was required to create and maintain records containing the

7

mailing addresses of each Class Member.

**B.     Individual Pay Equity Claims as to the Third Claim**

40.     Plaintiff Sheehy, a woman, began working for Intermountain via its predecessor SCL Health in or around June 2022 as a Shift Specialty Coordinator ("SSC") in the intensive care unit ("ICU"), herein referred to as "ICU SSC."

41.     Intermountain acquired SCL Health in April 2022, though the roll out of the acquisition was not completed until later that year.  The companies are referred to herein as "Intermountain."

42.     At the time of her hire by Intermountain, Ms. Sheehy had been a licensed registered nurse for just over eight years.

43.     Throughout that time, her nursing experience had been almost exclusively in ICUs.

44.     Ms. Sheehy also had experience working in ICUs prior to obtaining her RN degree.

45.     As of April 2023, Ms. Sheehy earned a base rate of approximately $52.24 as an ICU SSC.

46.     Approximately one month later, Intermountain offered Zach Zeiler a position as another ICU SSC.

47.     At the time, Mr. Zeiler had been a RN for approximately 12 years and he had worked for Intermountain since October 2022, initially as a staff RN.

48.     As of May 2023, Mr. Zeiler had worked in ICUs for approximately five years as compared to Ms. Sheehy's nine years.

49.     Nursing duties in an ICU are distinct from nursing duties outside of an ICU, requiring additional, specialized skill and training to ensure the safety of patients.

8

50. Despite Mr. Zeiler's substantially comparable years in nursing and his fewer years of experience as an ICU nurse, Intermountain offered Mr. Zeiler a base rate of approximately $60 per hour as the ICU SSC.

51. When Intermountain acquired SCL Health, the job title of ICU SSC was changed to Charge RN (herein referred to as "ICU Charge RN") and there was some reduction in administrative duties, but the role otherwise stayed the same.

52. In approximately late May 2023, Ms. Sheehy stepped down from her role as ICU Charge RN to engage in a post-baccalaureate program. Ms. Sheehy accepted a part-time position as Staff RN in the ICU (herein referred to as "ICU Staff RN") for a base rate of $46.50 per hour.

53. During this time, Ms. Sheehy sometimes filled in as the ICU Charge RN, at which time her base rate was increased by only $1.25 per hour, to approximately $47.75 per hour.

54. Throughout this time, Mr. Zeiler continued to earn a base rate of over $60 per hour to perform the same or substantially similar work, though in a full-time capacity, as an ICU Charge RN.

55. During this time, Intermountain did not adjust hourly wage rates based on the full- versus part-time status of its nursing staff.

56. In conformity with such policy or practice, Ms. Sheehy was offered a full-time ICU Staff RN position in August 2024 with no adjustment to the wage rate she had been paid as a part-time ICU Staff RN.

57. In or around December 2024 – and after her post-baccalaureate program came to an end – Ms. Sheehy reapplied for her previous role as a full-time ICU Charge RN.

58. At that time, Intermountain claimed that the maximum base rate for the role was

9

$59.18 per hour.

59. In line with this purported maximum base rate, Intermountain offered Ms. Sheehy a base rate of $54.45 per hour, $5 per hour less than the supposed maximum pay, based on her experience.

60. During this time, Mr. Zeiler continued to work as an ICU Charge RN.

61. At this time, Mr. Zeiler earned a base rate of approximately $63.50 per hour as the ICU Charge RN, which is $9.00 more per hour than the offer made to Ms. Sheehy and more than $4.00 more per hour than the purported maxiumum base rate for the role.

62. Further, although Ms. Sheehy now has a substantially similar length of nursing experience as Mr. Zeiler did in May 2023 (and more ICU nursing experience), her base wage rate is still more than $5 less per hour than the rate offered to Mr. Zeiler at that time.

63. Mr. Zeiler and Ms. Sheehy perform substantially similar – if not entirely equal – work. They perform the exact same job during different shifts.

64. The shift differential is not included in Ms. Sheehy's or Mr. Zeiler's base wage rates as alleged herein. Instead, the shift differential is applied as an additional percentage multiplier calculated off of the base wage rate.

65. Despite performing substantially similar work, Mr. Zeiler – a man – earns approximately $10 more per hour in his base wage rate.

66. The impact of this pay differential is further amplified when considering the shift differential to which Ms. Sheehy is entitled, as she works the less desirable night shift.

67. Ms. Sheehy attempted to address her concerns with her disparate pay prior to accepting the position and also since that time.

10

68. Despite being made aware of the pay differential, including the gender-based aspects of such, Intermountain refused to adjust Ms. Sheehy's offer and has refused to adjust her current wage rate.

**COUNT I**
**Violations of the Colorado Minimum Wages of Workers Act, C.R.S. § 8-6-101 *et seq.*,**
**as implemented by the COMPS Order, 7 CCR 1103-1**
**Overtime Violations**

69. Plaintiffs repeat and reallege each of the allegations above as if fully set forth herein.

70. Plaintiffs assert this count on their own behalf and on behalf of a class of all others similarly situated pursuant to F.R.C.P. 23. The Plaintiffs preliminarily define that class of others similarly situated as:

All Colorado hourly employees who worked on or after February 14, 2019 who worked overtime and holiday hours in the same workweek.

71. Defendant was Plaintiffs' and others' "employer" as that term is defined by the COMPS. 7 CCR 1103-1(1.6).

72. Plaintiffs and others were Defendant's "employees" as that term is defined by the COMPS because they performed labor for the benefit of Defendant. 7 CCR 1103-1(1.5).

73. Defendant violated the COMPS when it miscalculated the overtime rate to be paid to its employees and when it took a credit against overtime hours worked by its employees. 7 CCR 1103-1.

74. Plaintiffs and others suffered lost wages and lost use of those wages in an amount to be determined at trial. C.R.S. § 8-6-118.

75. Plaintiffs and others are entitled to recover unpaid wages, attorney fees, and costs of the suit. C.R.S. § 8-6-118; 7 CCR 1103-1(8.1(A).

11

**COUNT II**
**Violations of the Colorado Wage Claim Act ("CWCA"), C.R.S. § 8-4-101, *et seq*. – Failure to Pay All Earned, Vested and Determinable Wages**

76. Plaintiffs repeat and reallege each of the allegations above as if fully set forth herein.

77. Plaintiffs assert this count on their own behalf and on behalf of all others similarly situated. F.R.C.P. 23.

78. This claim is asserted on behalf of a subclass of the members of the Overtime class preliminarily defined as:

> All Colorado hourly employees who worked on or after February 14, 2022 who worked overtime and holiday hours in the same workweek.

79. Defendant was Plaintiffs' and others' "employer" as that term is defined by the CWCA because it employed Plaintiffs and others in Colorado. C.R.S. § 8-4-101(6).

80. Plaintiffs and others were Defendant's "employees" as that term is defined by the CWCA because they performed labor for the benefit of Defendant. C.R.S. § 8-4-101(5).

81. Defendant violated the CWCA when it failed to pay all wages due. C.R.S. § 8-4-103(6).

82. Defendant incurred penalties under the CWCA when it failed to tender wages due within 14 days of receipt of Plaintiffs' demand for all wages due to them and to those similarly situated. C.R.S. § 8-4-109.

83. Plaintiffs and others suffered lost wages and lost use of those wages in an amount to be determined at trial.

84. Plaintiffs and others are entitled to recover in a civil action all earned, vested and determinable wages owed to them, statutory penalties, attorneys' fees, and costs of suit. C.R.S. § 8-4-109; C.R.S. § 8-4-110.

## COUNT III
**Violations of the Colorado Equal Pay for Equal Work Act ("CEPEWA"), C.R.S. § 8-5-102 – Unequal Pay Based on Sex for Substantially Similar Work
(Plaintiff Kerri Sheehy Against Defendant Intermountain)**

85. Plaintiffs repeat and reallege each of the allegations above as if fully set forth herein.

86. Defendant paid Plaintiff Sheehy, a woman, a wage rate less than the rate paid to her male counterpart, Zach Zeiler, for substantially similar work as an ICU Charge RN (formerly ICU SSC).

87. Defendant's conduct has caused Plaintiff damages, including economic damages, and those damages are ongoing as Plaintiff Sheehy continues to suffer from this pay disparity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray, as to their FIRST CLAIM brought pursuant to the CMWWA as implemented by the COMPS Order, that:

a. This action be certified as a class action pursuant to F.R.C.P. 23;

b. They be certified as the Class representatives;

c. Andrew H,. Turner and Brandt Milstein of Milstein Turner, PLLC be appointed Rule 23 Class counsel;

d. Prompt notice of this litigation be sent to all putative Class members;

e. They and the Class members be awarded the wages they are due, together with attorneys' fees and costs of suit;

f. They be awarded service awards in recognition of their work as representatives of the Class; and

g. They and the Class be awarded such other and further relief as may be necessary and appropriate.

And, as to their SECOND CLAIM brought pursuant to the CWCA, that:

13

a. This action be certified as a class action pursuant to F.R.C.P. 23;

b. They be certified as the Class representatives;

c. Andrew H,. Turner and Brandt Milstein of Milstein Turner, PLLC be appointed Rule 23 Class counsel;

d. Prompt notice of this litigation be sent to all putative Class members;

e. They and the Class members be awarded the earned, vested, and determinable wages they are due;

f. They and the Class members be awarded statutory penalties;

g. They and the Class members be awarded attorneys' fees and costs of suit;

h. They be awarded service awards in recognition of their work as representatives of the Class; and

i. They and the Class be awarded such other and further relief as may be necessary and appropriate.

And, as to Plaintiff Sheehy's THIRD CLAIM brought pursuant to the CEPEWA, that

j. She be awarded all legal and equitable relief to which she is entitled, including payment of her lost wage rate (both applied to her base wage rate and applied to any adjustments to her base rate, such as a shift differential), a pay increase, and liquidated damages;

k. She be awarded all amounts necessary to make her whole, including tax gross up and the lost investment value of her lost wage rate;

l. She be awarded her reasonable costs, including attorney fees and expert witness fees;

m. She be awarded all pre- and post-judgment interest at the highest lawful rate, including on all such damages, fees, and/or costs; and

n. Any other appropriate relief at law and in equity, including injunctive relief, this Court deems just and proper.

Respectfully submitted this 30th day of April 2025,

*s/ Andrew H. Turner*
Andrew H. Turner
Brandt Milstein
MILSTEIN TURNER, PLLC
2400 Broadway, Suite B
Boulder, CO 80304
303.440.8780
brandt@milsteinturner.com

*Attorneys for Plaintiffs*

**Spark Justice Law LLC**
Laura B. Wolf
3435 S. Inca Street, Suite C-113
Englewood, CO 80110
(303) 802-5390 (t)
(303) 848-3003 (f)
laura@spark-law.com

*Attorney for Plaintiff Sheehy Under Count III*

15