**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00914-RMR-SBP
Consolidated With Civil Action No. 1:25-cv-02290-RMR-SBP

KERRI SHEEHY, DEAN BEACOM, AND TAYLOR
ARCHULETA, ON THEIR OWN BEHALF AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED,

     Plaintiffs,

v.

INTERMOUNTAIN HEALTH CARE INC.,

     Defendant.

---

**EMERGENCY MOTION TO ENJOIN FLETCHER JONES AND COUNSEL FROM
IMPROPER COMMUNICATIONS WITH CLASS MEMBERS, PURSUANT TO THE
ALL WRITS ACT, 28 U.S.C. § 1651(A)**

---

Defendants Intermountain Health Care Inc. ("Intermountain"); Sisters of Charity of Leavenworth Health System, Inc. ("SCL Health"); and SCL Health Partners, LLC (collectively "Defendants"), by and through undersigned counsel, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., hereby file this Emergency Motion to Enjoin Fletcher Jones and Counsel from Improper Communications with Class Members, Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and state as follows:

### CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a), on April 23, 2026, counsel for Defendants conferred with Plaintiffs' counsel regarding the relief sought in this Motion. Plaintiffs' counsel stated Plaintiffs do not oppose the relief sought herein.

## **INTRODUCTION**

Less than 48 hours after Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement (ECF No. 77), Fletcher Jones—the named plaintiff in a related class action in state court—sent the following mass text message to an unknown number of class members in this case:



Jones' text message is replete with false and misleading statements that improperly interfere with this Court's jurisdiction. They are an unveiled attempt to undermine the pending settlement and pressure class members into opting out. Among other misrepresentations, the message misstates the scope and terms of the settlement

2

currently pending before this Court, fabricates an unsubstantiated damages figure of $500 million, and falsely represents that opting out of the federal settlement will "automatically" include class members in a nonexistent state court settlement. In addition, Jones' promise to "launch [a] professional op-out [sic] campaign this week" strongly suggests that his counsel either directed this communication and/or is planning to direct future, improper communications targeting the certified class represented by class counsel.

Defendants respectfully request this Court promptly exercise its authority under the All Writs Act, 28 U.S.C. § 1651(a) ("AWA"), to issue an order enjoining Jones and his counsel from further unauthorized and improper communications with members of the settlement class in this case, and compelling Jones to issue a corrective communication to recipients of his prior message.

### **RELEVANT PROCEDURAL BACKGROUND**

The Court is familiar with this trio of class actions, all of which were filed on behalf of all non-exempt employees in Colorado and bring claims under Colorado wage and hour law for unpaid wages. The case currently before this Court is a consolidation of the *Sheehy, et al. v. Intermountain Health Care, Inc.*, Case No. 1:25-cv-00914-RMR-SBP (D. Colo.) (the "*Sheehy* Action") and *Huber v. Sisters of Charity of Leavenworth Health System, Inc., et al.*, Case No. 1:25-cv-02290-SBP (D. Colo.) (the "*Huber* Action"). The third case, *Fletcher Jones v. Sisters of Charity of Leavenworth Health System, Inc.*, is

currently pending in the District Court, Broomfield County, Case No. 2025CV30029 (the "*Jones* Action").[1]

On March 13, 2026, this Court entered Orders in both the *Sheehy* and *Huber* Actions appointing Brandt P. Milstein and Andrew H. Turner of Milstein Turner PLLC, Matthew S. Parmet of Parmet Law PC, and Don J. Foty of Foty Law Group (collectively, "Interim Class Counsel") as Interim Class Counsel pursuant to Federal Rule of Civil Procedure 23(g)(3). ECF No. 70.

On March 26, 2026, the Court adopted Magistrate Judge Prose's January 16, 2026 Report and Recommendation and certified a class of all current and former hourly employees of Intermountain who were classified by Intermountain as non-exempt and were paid on an hourly basis, excluding pharmacists, who worked both overtime hours and hours eligible for holiday premium pay in the same workweek, and who worked in Colorado between February 14, 2019 and September 2, 2024 under Federal Rule of Civil Procedure 23(b)(3). ECF No. 72. Brandt P. Milstein and Andrew H. Turner of Milstein Turner PLLC, Matthew S. Parmet of Parmet Law PC, and Don J. Foty of Foty Law Group were appointed as Class Counsel.

On April 16, 2026, the Court consolidated the *Sheehy* and *Huber* Actions. ECF No. 76. On April 20, 2026, Plaintiffs in the *Sheehy/Huber* Action filed an Unopposed Motion for Preliminary Approval of the Class Action Settlement, which is currently pending before the Court. ECF No. 77.

---

[1] Jones' case is currently limited to SCL Health. However, Intermountain has filed a motion to intervene in the *Jones* Action, which is currently pending.

Two days later, on April 22, 2026, the court in the *Jones* Action entered an order staying discovery as to the settled claims in the *Sheehy/Huber* Action (the "Stay Order"). *See* Declaration of Marielle A. Moore ("Moore Decl."), attached as Exhibit A, ¶ 4; Ex. 1. Hours after the state court issued the Stay Order, Jones sent a mass text message to an unknown number of class members in the *Sheehy/Huber* Action, as well as his former manager at St. Mary's Hospital, Lindsay Harris, stating:

> Urgent !! Today the Colorado State Courts accepted Ogletree Deacon's [sic] motion to pause our case while the federal settlement continues. The estimated total value of our case is 500 million dollars which includes penalties. This value is per our Economic Research firm that was hired. The federal case involving nurses wants to settle 18,000 nursing claims for a measly 18 million. It is rubbish. The settlement has not been approved by the courts yet. When/if the settlement is approved nurses will get letters in the mail with 45 days to opt out of the federal settlement which will automatically include them in our state settlement. 18 million or 500 million? $500 per nurse or $5000 per nurse? You need to spread the word turds. We will launch our professional op-out [sic] campaign this week.

Declaration of Lindsay Harris, attached as Exhibit B, ¶ 4.

## **ARGUMENT**

### A. This Court Has Authority under the All Writs Act to Enjoin Jones and His Counsel.

Pursuant to the All Writs Act ("AWA"), "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A court may grant an injunction under the AWA "whenever it is calculated in [the court's] sound judgment to achieve the ends of justice entrusted to it." *Klay v. United Healthgroup, Inc.*, 376 F.3d

1092, 1100 (11th Cir. 2004) (quoting *Adams v. United States*, 317 U.S. 269, 273 (1942))

(internal quotations omitted).

As the Eleventh Circuit has explained:

Whereas traditional injunctions are predicated upon some cause of action, an All Writs Act injunction is predicated upon some other matter upon which a district court has jurisdiction. Thus, while a party must "state a claim" to obtain a "traditional" injunction, there is no such requirement to obtain an All Writs Act injunction — it must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by some action or behavior.

*Klay,* 376 F.3d at 1100; *Rohe v. Wells Fargo Bank*, 988 F.3d 1256, 1265 (11th Cir. 2021).

Under the AWA, "a court may enjoin almost any conduct 'which, left unchecked, would

have . . . the practical effect of diminishing the court's power to bring the litigation to a

natural conclusion'…It may also compel acts 'necessary to promote the resolution of

issues in a case properly before it…[or] facilitat[e]…the court's effort to manage the case

to judgment…'" *Klay,* 376 F.3d at 1101 (citing *ITT Community Development Corp. v.*

*Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)). Critically, the Court's power extends to non-

parties. *United States v. New York Tel. Co.,* 434 U.S. 159, 174 (1977) ("The power

conferred by the Act extends ... to persons who, though not parties to the original action

or engaged in wrongdoing, are in a position to frustrate the implementation of a court

order or the proper administration of justice, and encompasses even those who have not

taken any affirmative action to hinder justice.") (citations omitted); *United States v. Silva,*

140 F.3d 1098, 1104 (7th Cir. 1998).

In the class action settlement context, courts have applied the AWA where "a

district court retains exclusive jurisdiction over settlement agreements and distribution of

settlement funds pursuant to those agreements, [so that] it may issue orders necessary to protect the settlement from threats by both parties and non-parties." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig*., No. 05-MD-1720, 2014 WL 4966072, at *31 (E.D.N.Y. Oct. 3, 2014); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig*., 768 F. Supp. 3d 418, 431 (E.D.N.Y. 2025) ("The All Writs Act, 28 U.S.C. § 1651(a), authorizes courts to enter curative orders in the context of class action settlement agreements as necessary 'to protect the settlement from threats by both parties and non-parties.'"); *see also In re Synthroid Mktg. Litig.*, 197 F.R.D. 607, 610 (N.D. Ill. 2000) (An injunction, where necessary to protect the court's earlier orders, including preliminary approval of the settlement of this class action, is authorized under the All Writs Act, 28 U.S.C. § 1651(a)).  Accordingly, this Court has authority to "prohibit communications with class members entirely, compel communications correcting misleading statements, and declare contracts between third parties and class members void." *In re Payment*, 768 F. Supp. 3d at 431; *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-MD-1720, 2026 WL 885116, at *12 (E.D.N.Y. Apr. 1, 2026) ("The Court is authorized to "take curative action—such as requiring the distribution of corrective notices or entering injunctive relief—where misleading or false statements are made to class members.").

Here, the Court has certified a class in the *Sheehy* Action, appointed Interim Class Counsel in the *Huber* Action, consolidated these two cases, and now has a pending Motion for Preliminary Approval of a comprehensive class-wide settlement pending before it. Jones and his counsel are not parties to the *Sheehy/Huber* Action but are

7

nonetheless "in a position to frustrate the implementation of a court order or the proper administration of justice." *New York Tel. Co.*, 434 U.S. at 174. The AWA, therefore, provides this Court with authority to enjoin Jones and his counsel from engaging in improper communications with class members as outlined below[2].

**B. The Court Should Exercise Its Power under the All Writs Act to Stanch the Harm and Ongoing Threat of Improper Conduct by Jones and His Counsel.**

Jones' April 22nd mass text message contains multiple false and misleading statements that are designed to undermine the pending settlement and coerce class members to opt out, thereby threatening the integrity of the settlement process and the rights of the class members under the Court's jurisdiction.

Jones' text inaccurately represents the nature and scope of the *Sheehy/Huber* settlement, the rights of class members, and the legal consequences of participation. Specifically, Jones makes the following false, coercive, and misleading statements:

- **"Today the Colorado State Courts accepted Ogletree Deacon's [sic] motion to pause our case . . ."** This statement is false. The State Court did <u>not</u> pause or stay Jones' case in its entirety. Rather, the Court stayed discovery only as to the claims relating to the class members covered by the *Sheehy/Huber* settlement, which is currently pending before this Court. (*See* Ex. A, Moore Decl., Ex. 1.)

- **"The federal case involving nurses wants to settle 18,000 nursing claims for a measly 18 million. It is rubbish."** This statement is false in multiple respects. The *Sheehy/Huber* Action and related settlement do not cover only nurses. They cover all non-exempt employees in Colorado, excluding non-

---

[2] Without waiving their right to do so, Defendants do not at this juncture ask the Court to enjoin the state court from proceeding on the same class claims that are before this Court, which have been certified and settled, subject to the Court's approval. Instead, Defendants ask only that the Court enjoin Jones and his counsel from their improper and misleading communications with class members in *this* action in order to prevent their interference with the Court's jurisdiction over this action.

exempt pharmacists, during the relevant time period. Moreover, the *Sheehy/Huber* settlement amount is not $18 million. Finally, Jones does not have pay and time data for the class covered by the *Sheehy/Huber* settlement (Ex. A, Moore Decl., ¶ 6) and, therefore, has no basis to claim that the settlement is "measly" or "rubbish."

- **"When/if the settlement is approved nurses will get letters in the mail with 45 days to opt out of the federal settlement which will automatically include them in our state settlement."** This statement is also false. There is no settlement in the *Jones* Action, nor is there any guarantee of a settlement (or any recovery at all). Jones falsely represents that opting out of the *Sheehy/Huber* settlement will automatically include these individuals in a nonexistent class in a nonexistent state court settlement, which he then attempts to tie to an unsubstantiated dollar figure (as set forth in the next paragraph).

- **"The estimated total value of our case is 500 million dollars which includes penalties."** Jones has no basis for this calculation of alleged damages. Indeed, Jones and his counsel do not have the pay and time records for any of the class members covered by the *Sheehy/Huber* settlement. (Ex. A, Moore Decl., ¶ 6). Jones only received the pay and time records for the putative class of non-exempt pharmacists on April 16, 2026. Moreover, Jones' counsel has represented that they need pay and time data for all employees to perform a damages calculation.

- **"$500 per nurse or $5000 per nurse?"** Jones has no basis to suggest that class members who opt out of the *Sheehy/Huber* settlement would receive a 10-fold increase in their settlement payment, the promise of which is clearly designed to induce opting-out. He also has no basis to provide any estimate of settlement payments in the *Sheehy/Huber* settlement, much less his State Court Action, where there is no settlement. Finally, it is equally inaccurate to suggest class members are receiving the same settlement payments when there is a pro-rata formula on which the settlement, if approved, will be based.

In sum, the thrust of Jones' message is a high-pressure, panic-inducing pitch to the effect that "the state court stopped my case pending the *Sheehy/Huber* settlement, but that settlement is bad for you. You can get 10 times more money if you join the settlement in my case. Make sure you opt-out when you get the *Sheehy/Huber* settlement notice." By any standard, the message is wholly inappropriate and infringes on the Court's

9

jurisdiction to manage the settlement approval process, including to review and approve any notice of settlement that is sent to the putative class. The Court must enjoin such communications with class members and require corrective messaging.[3]

Jones' closing statement—"[w]e will launch our professional op-out [sic] campaign this week"—is equally problematic. It suggests that his counsel has either (1) directed this communication or (2) is planning to direct future improper communications to class members under the guise of a "professional" campaign, or both. Indeed, the timing of the text message, which was sent less than 48 hours after the Motion for Preliminary Approval was filed and mere hours after the State Court's order staying discovery on the very claims on which a settlement has already been reached in *Sheehy/Huber*, further suggests coordination with his counsel. At minimum, Jones had to have learned of the discovery stay in the State Court Action from his counsel because nobody else was present at that hearing, it was not available through any virtual platform, and no docket entry had been entered by the time Jones sent his text message. And, at the April 22nd hearing in the *Jones* Action, his counsel explained to the court that there would be objectors to the *Sheehy/Huber* settlement, and that they knew who the objectors were— unusual knowledge to have just two days after the agreement was filed with this Court and before any class member was given Court-approved instructions regarding the opt-out process.  (Ex. A, Moore Decl., ¶ 5.)

---

[3] Defendants do not have knowledge of what additional text messages (or messages sent through social media channels or messaging services such as WhatsApp) Jones may have sent and urges the Court to require Jones to submit to the Court and to Defendants any other messages he has sent to *Sheehy/Huber* class members since Class Counsel's appointment.

Jones' counsel may not contact the *Sheehy/Huber* class members because they are represented by counsel here. Colorado Rule of Professional Conduct 4.2 provides that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer or LLP in the matter, unless the lawyer has the consent of the other lawyer or LLP or is authorized to do so by law or a court order." The class members covered by the *Sheehy/Huber* settlement are represented by Interim Class Counsel appointed by this Court in the *Huber* Action and class counsel by virtue of class certification in the *Sheehy* Action and consolidation. Therefore, Rule 4.2 restricts Jones' counsel's ability to communicate with these class members. The same holds true to the extent Jones' counsel has participated in, directed, or intends to direct an opt-out campaign targeting members of the *Sheehy/Huber* class. Such conduct would implicate the same ethical concerns.

Likewise, Colorado Rule of Professional Conduct 7.3 prohibits a lawyer from soliciting professional employment by live, person-to-person contact when a significant motive for the lawyer's doing so is the lawyer's or law firm's pecuniary gain. Even when such solicitation is not prohibited by this Rule, it is otherwise improper if it involves "coercion, duress or harassment." Colo. R. Civ. P. Conduct 7.3(c)(2). To the extent Jones' counsel intends to direct a mass communication campaign targeting class members to solicit opt-outs through coercion and promises of specific recoveries, which certainly appears to be their intention, with the goal of funneling those individuals into the *Jones* litigation, such solicitation is improper under Rule 7.3. Jones' counsel cannot use their

11

client as a vehicle to circumvent their ethical obligations under Rules 4.2 and 7.3, nor can they direct Jones to make communications to represented class members that they themselves are prohibited from making, as it appears they have done here.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order enjoining Jones and his counsel from further unauthorized and improper communications with members of the settlement class; compelling Jones to issue the corrective communication attached hereto as Exhibit C to every individual who received the April 22, 2026 text message;[4] and requiring Jones to certify compliance with that order by identifying all recipients by name and contact information.

---

[4] A corrective message is particularly appropriate here given (1) Jones' direction to "spread the word turds" (*i.e.*, asking recipients of his text message to forward his message; and (2) there has not yet been <u>any</u> Court-authorized class notice in the *Sheehy/Huber* Action. *See, e.g.*, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2026 WL 885116, at *12 (ordering non-party to issue a communication (with language approved by class counsel) to correct false and/or misleading information previously provided).

Respectfully submitted this 24th day of April, 2026.

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.

*s/ Rebecca M. Lindell*

Marielle A. Moore
Rebecca M. Lindell
2000 South Colorado Boulevard
Tower Three, Suite 900
Denver, CO  80222
Telephone:  303.764.6800
Facsimile:  303.831.9246
marielle.moore@ogletree.com
rebecca.lindell@ogletree.com

Jason N.W. Plowman
15 West South Temple, Suite 950
Salt Lake City, UT 84101
Telephone: 801.658.6100
Facsimile:  385.360.1707
jason.plowman@ogletree.com

*Attorneys for Defendant Intermountain
Health Care Inc., SCL Health Partners,
LLC, and Sisters of Charity of
Leavenworth Health System, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of April, 2026, I electronically filed the foregoing **EMERGENCY MOTION TO ENJOIN FLETCHER JONES AND COUNSEL FROM IMPROPER COMMUNICATIONS WITH CLASS MEMBERS, PURSUANT TO THE ALL WRITS ACT, 28 U.S.C. § 1651(A)** with the Clerk of Court using the CM/ECF system which shall electronically serve a true and accurate copy of the same upon Plaintiffs' counsel and non-party Fletcher Jones' counsel, as follows:

Brandt P. Milstein
Andrew H. Turner
MILSTEIN TURNER PLLC
2400 Broadway, Suite B
Boulder, CO 80304
Telephone: 303.440.8780
brandt@milsteinturner.com
andrew@milsteinturner.com

Matthew S. Parmet
PARMET LAW PC
2 Greenway Plaza, Suite 250
Houston, TX 77046
matt@parmet.law

*Attorneys for Plaintiffs Kerri Sheehy, Dean Beacom, Taylor Archuleta and Lura Huber*

Don J. Foty
FOTY LAW GROUP
2 Greenway Plaza, Suite 250
Houston, TX 77046
dfoty@fotylawgroup.com

Laura B. Wolf
Spark Justice Law LLC
3435 S. Inca Street, Suite C-113
Englewood, CO 80110
laura@spark-law.com

Gillian G. O'Hara
Tiffanie Dee Stasiak
Kathleen F. Guilfoyle
Lisa Marie Saccomano
Kutak Rock LLP
2001 16th Street, Suite 1800
Denver, CO 80202
gigi.ohara@kutakrock.com
tiffanie.stasiak@kutakrock.com
lisa.saccomano@kutakrock.com
kathleen.guilfoyle@kutakrock.com

*Attorneys for non-party Fletcher Jones*

s/ Alison L. Shaw
Alison L. Shaw, Paralegal

14