**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:25-cv-000914-RMR-SBP *consolidated with*
Case No. 1:25-cv-2290-RMR-SBP

KERRI SHEEHY, DEAN BEACOM,
TAYLOR ARCHULETA, LURA HUBER
on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

INTERMOUNTAIN HEALTH CARE, INC.
and SCL HEALTH PARTNERS, LLC,

      Defendants.

**PLAINTIFFS' JOINDER IN DEFENDANTS' EMERGENCY MOTION TO ENJOIN
FLETCHER JOINES AND HIS COUNSEL FROM IMPROPER
<u>COMMUNICATION WITH CLASS MEMBERS</u>**

Plaintiffs Kerri Sheehy, Dean Beacom, Taylor Archuleta, and Lura Huber, on behalf of

themselves and all others similarly situated, (collectively the "Plaintiffs") hereby file this Joinder

in the Defendants' Emergency Motion to Enjoin Fletcher Jones and his Counsel.  In support, the

Plaintiffs state as follows.

## I.      <u>INTRODUCTION</u>

Fletcher Jones ("Jones") has engaged in deceptive, misleading, and fraudulent conduct that

has tainted the class notice process, a process which is only to be conducted under the Court's

supervision.  Without permission from the Court, Jones sent an illegal class communication.

Indeed, approximately two days after Plaintiffs filed their Motion for Preliminary Approval of the

Class Action Settlement, (Dkt. 77), in this case, Jones sent a mass text communication to Class

Members making false and fraudulent statements that were designed to prevent them from making

1

the independent choice about whether to participate in the proposed settlement.  The deceptive and fraudulent statements from Jones include the following:

- Jones falsely promised that the Class will receive **"500 million dollars"** if they opt out of the settlement and hire the attorneys representing Jones.

- Jones falsely promised that each Class Member will receive **"5000 per nurse"** if they opt out of the settlement and hire the attorneys representing Jones.

(Dkt. 81-2 at 2).

Jones's statements are both fraudulent and deceptive.  There is no $500,000,000 settlement offer from Defendants and there never will be as the potential damages in this case are not close to this figure.  And there is no reasonable basis for Jones to have made this comment because Jones and his Counsel have no idea the amount of the potential unpaid wages that could be owed in this case.  Jones and his Counsel do not have the pay data for the Class, the time clock data for the Class, or any other data to calculate the potential damages. Despite this fact, Jones made a material misrepresentation to the Class Members and promised them that they will receive **$500,000,000.00** if they opt-out of the proposed settlement. In doing so, Jones has polluted the Class Notice process and denied the Class Members of the ability to make an informed decision. Worse, Jones usurped the authority of the Court as any class communication must first be approved by the Court. *See, e.g., In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-11 (10th Cir. 2001); *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Jones further deceived the Class Members by stating that there is a "state settlement" that he is involved with that will pay "$5000 per nurse." (Dkt. 81-2 at 2).  This statement is false and misleading as there is no "state settlement" and it is unclear if there ever will be one.  The intention

of Jones is clear – he is making false statements to the Class Members to try to force them to opt-out of the pending class settlement. By polluting the class notice process and disseminating blatantly false information, Jones has prevented the Class Members from receiving Court approved, neutral information. Now, Jones intends to continue to spread false and deceptive information to pollute the class notice process. He stated that he intends to begin a "professional op-out [sic] campaign this week." (Dkt. 81-2 at 2). Courts have a duty to intervene to prevent misleading, coercive, and improper communication, such as the communication sent by Jones. *See Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100 (1981)). The Court must now intervene to enjoin Jones and his Counsel to prevent further harm being done to the Class Members.

## II.    ARGUMENTS AND AUTHORITIES

### A. The Court should order that a corrective notice be issued to all Class Members to undo the prejudice caused by Jones.

The problem—in a nutshell—is that the Class Members may refuse to exercise their right to participate in the proposed federal class action settlement believing inaccurately, courtesy of Jones, that (1) there is a $500,000,000 state court settlement (which does not exist and will never exist), and (2) that they are losing $5,000 if they participate in the class settlement reached by Plaintiffs. Consequently, Jones has polluted the notification process by circumventing the Court-authorized notice process. To undo the harm that has been done, Plaintiffs request that a corrective notice be issued to the Class Members. Attached as Exhibit "A" is Plaintiffs' proposed corrective Notice.

Courts have a duty to limit communication with potential class members when misleading, coercive, or improper communication has occurred. *See Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100 (1981)). Evidence of coercive behavior provides a district court with "ample discretion" to

3

regulate communications with class members. *See Kleiner v. First Nat'l Bank of Atlanta,* 751 F.2d 1193, 1201–03 (11th Cir.1985).

"Courts applying the *Gulf Oil* standard have found that *ex parte* communications soliciting opt-outs [in Rule 23 cases], or even simply discouraging participation in a case, undermine the purposes of Rule 23 and require curative action by the court." *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 517 (N.D. Cal. 2010); *see also Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630, 632 (N.D. Tex. 1994) (noting that attempts to influence plaintiffs and potential plaintiffs outside the confines of court-supervised notice are improper in class litigation); *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1231-32 (S.D. Ala. 2008) (same). Further, courts have found that when a party engages in *ex parte* communication and omits material information, or even fails to provide information to the class members, such conduct is per se misleading. *Camp v. Alexander*, 300 F.R.D. 617, 624 (N.D. Cal. 2014). District courts have "the duty and broad authority" to exercise control over class and collective actions and to enter appropriate orders governing the conduct of counsel and parties, including communications with putative class members. *See e.g. Zwerin v. 533 Short N.*, LLC, No. 2:10-CV-488, 2011 WL 2446622, at *2 (S.D. Ohio June 15, 2011) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989)).

Consistent with this authority, the Court should allow the attached corrective notice to remedy the deceptive and false communication from Jones. (*See* Ex. "A" – proposed corrective notice). Plaintiffs' proposed corrective notice is narrowly tailored to undo the specific harms caused by Jones.

In *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664 (E.D. Tex. 2003), the named plaintiff moved for an injunction to remedy the misinformation and confusion caused by the defendant sending

4

an unapproved letter to the potential class members. The *Belt* court granted the injunction against the defendant—and also against the defendant's outside counsel--preventing any further communication about the case with the potential class members. *Id.* at 669-70. Further, the court ordered the issuance of corrective notices. *Id.* The court's order was designed to undo the harm caused by the defendant's campaign of disinformation and confusion. *Id.*[1]

Like in *Belt*, Jones has sent false information to the Class Members to dissuade them participating in the settlement. By doing so, Jones has deprived the Class Members of receiving a neutral, Court authorized notice. Like in *Belt*, a corrective notice should issue to undo the harms caused by Jones.

Similarly, in *Guifu Li. See Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010) the Northern District of California held that an employer's communication with the potential class members in a wage and hour class/collective action was improper warranting a corrective notice. In *Guifu Li*, after the plaintiffs filed a wage and hour class/collective action, the employer held individual meetings with each potential class member and presented opt-out forms to the workers. *Id.* at 512. The court stated as follows:

> "Unsupervised communications urging individuals to opt out, by their very nature, are likely to produce distorted statements on the one hand and the coercion of individuals on the other. [citation to *Kleiner* ]. *Wang v. Chinese Daily News, Inc.,* 236 F.R.D. 485, 490 (C.D.Cal.2006).

*Id*. at 517.

---

[1] Class actions "serve an important function in our system of civil justice," but present "opportunities for abuse as well as problems for courts and counsel in the management of cases." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99–100, (1981) (discussing Rule 23 class actions).

The *Guifu Li* Court found this conduct to be improper and authorized the issuance of a corrective notice, and prohibited the defendant from communicating with the potential class members regarding the case. *Id*. at 518.

The facts in *Guifu Li* are very similar to the facts in the present case.  Like in *Guifu Li*, Jones sent a false and misleading mass text to Class Members to prevent them from exercising their rights in this case.  Jones made false statements to Class Members and without a corrective notice, they may never know the truth.  Like in *Guifu Li*, a corrective notice is warranted to remedy the harm caused by Jones.

Ultimately, Court intervention is necessary.  Jones did not disclose that there is no state court settlement and there may never be one.  Jones did not state that he is speculating as to the amount of the potential unpaid wages that could be owed.  In fact, Jones did not tell the truth as to any material aspect of the class settlement.  To remedy such conduct, the Court should grant the pending Emergency Motion authorize the relief requested herein.

**B. The Court should enjoin Jones and his Counsel from initiating any communication with any Class Member about matters pertaining to this case.**

As noted by Defendants, the All Writs Act, 28 U.S.C. § 1651(a) gives the Court the authority to enjoin the conduct of Jones and his Counsel.  The All Writs Act grants this Court the authority to issue any writs "necessary or appropriate in aid" of its jurisdiction. It is well-established that this "aid-of-jurisdiction" authority applies squarely to the circumstances here, when a federal court is presented with, as the Manual for Complex Litigation states, "a class action settlement preliminarily or finally approved in the federal court." Manual for Complex Litigation, Fourth (2004) at §21.15; *accord* at §20.32 (the All Writs Act has "been used to effectuate global settlements in large scale litigation by enjoining or removing to federal court parallel state court litigation that would otherwise frustrate the adoption or implementation of comprehensive class

6

settlements approved by the federal court as binding on the parties to the state court litigation"),

§21.42 ("After certification, the federal court is authorized to issue an injunction 'when necessary

in aid of its jurisdiction,' ... to enjoin pending state litigation if settlement in the certified federal

class action is completed or imminent and the need to protect the class settlement is shown."). The

rationale for an All Writs injunction has been well-summarized as follows:

> The threat to the federal court's jurisdiction posed by parallel state actions is particularly significant where there are conditional class certifications and impending settlements in federal actions. Many--though not all--of the cases permitting injunctions in complex litigation cases involve injunctions issued as the parties approached settlement. Complex cases in the later stages--where, for instance, settlement negotiations are underway-embody an enormous amount of time and expenditure of resources. It is in the nature of complex litigation that the parties often seek complicated, comprehensive settlements to resolve as many claims as possible in one proceeding. These cases are especially vulnerable to parallel state actions that may frustrate the district court's efforts to craft a settlement in the multi-district litigation before it, thereby destroying the ability to achieve the benefits of consolidation. In complex cases where certification or settlement has received conditional approval, or perhaps even where settlement is pending, the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court.

*In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 236 (3d Cir. 2002) (multiple citations and

quotation omitted).[2]

The Second Circuit Court of Appeals reached the same conclusion over thirty years ago in

*In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985), wherein the Court upheld an injunction

---

[2] *See also, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1018, 1024-25 (9th Cir. 1998) (class action with preliminarily-approved settlement where stay on state class actions prevented one plaintiff from opting out an entire subclass of plaintiffs from the same state), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 33 (2011); *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 195, 202-04 (3d Cir. 1993) (class action with imminent settlement and fairness hearing where injunction prevented mass opting out of the plaintiffs of one state for duplicative state proceedings); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 880-81 (11th Cir. 1989) (class action at judgment stage where injunction prevented state court litigation that would interfere with administration of post-judgment proceedings).

against the State of New York and numerous other states, which wished to bring their own suit to seek restitution on behalf of their state's citizens in the plaintiff class. *Id*. at 333. The district court had reasoned that such state lawsuits would "likely [] impair [the] federal court's jurisdiction" by undermining the settlements reached with the eighteen defendants and the ongoing settlement negotiations with the other eight defendants." *Id*. The Second Circuit affirmed the decision holding that the injunction was necessary for the district court to preserve its jurisdiction because the ongoing settlement negotiations would be "frustrated by reason of the existence of competitive litigation, [such that] it would simply be impossible to implement them if they be approved, or to proceed with the class actions if . . . this court concludes to proceed on the merits," and because the state court actions could jeopardize its ability to rule on the settlements, would increase the cost of litigation, would create a risk of conflicting results, and would prevent the plaintiffs from benefiting from any settlement already negotiated or from reaching a new and improved settlement in the federal court. *Id.*

Courts in the Tenth Circuit agree that the All Writs Act provides authority for a federal judge to enjoin state court actors that interfere with a federal court's jurisdiction. *See, e.g., Payne v. Tri-State Careflight*, 332 F.R.D. 611, 681 (D.N.M. 2019) (stating: "pursuant to the All Writs Act [], a district court may enjoin state court proceedings which would interfere with an imminent settlement agreement"); *see also Anderson Living Trust v. ConocoPhillips Co., LLC*, 349 F.R.D. 365, 413 (D.N.M. 2025) (same).

Here, the conduct of Jones and his Counsel are designed to interfere with the jurisdiction of this Court. Jones has directly usurped the Court's authority to supervise communications with the Class Members. Jones is now trying to influence the Class Members by engaging in a "professional opt out campaign." These actions are being done through the state court process,

which is directly interfering with the Court's federal jurisdiction to supervise and oversee the class

settlement process.  Therefore, the Court should immediately enjoin Jones and his Counsel from

initiating any contact with the Class Members.

**C. The Court should sanction Jones and his Counsel if they engage in any purported "professional opt-out campaign."**

Courts have recognized the dangers of disinformation and coercion with respect to class

actions. *See EEOC v. Morgan Stanley & Co., Inc.*, 206 F. Supp. 2d 559, 563 (S.D.N.Y. 2002).  A

plaintiff need not show actual harm to justify limitations on communications with putative class

members— it is sufficient if a showing of potential harm is made. *Burrell v. Crown Cent.

Petroleum*, 176 F.R.D. 239, 243 (E.D. Tex. 1997) (where alleged class action has been filed, court

may limit ex parte contact with class that is misleading or coercive).  It is the responsibility of the

Court to safeguard the rights of class members. *See Hoffman-LaRoche*, 493 U.S. at 171. Judicial

oversight of the communications with class members protects against misleading communications

that may influence the exercise of their rights. *See id.*

Therefore, Jones and his Counsel's intent to engage in a "professional opt-out campaign"

to solicit exclusions from this class action constitutes a serious challenge to the authority of the

Court to maintain control over communications to the Class. *See* 3 Newberg on Class Actions §

15.19 (3d ed. 1992).  In *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985), the

employer hatched a scheme to influence potential class members' decisions whether to participate

in the case. The Eleventh Circuit declared:

> Unsupervised, unilateral communications with the Plaintiff class sabotage the goal
> of informed consent by urging exclusion on the basis of a one-sided presentation of
> the facts, without opportunity for rebuttal. The damages from misstatements could
> well be irreparable.

*Id.* at 1203.  A covert scheme to solicit exclusion requests from putative class members "relegates the essential supervision of the court to the status of an 'afterthought.'" *Id.*  As a result, the trial court sanctioned the lead trial counsel in the amount of $50,000 because he had advised his client to solicit the exclusions from the potential class members.  *See id.*  The Eleventh Circuit affirmed this sanction.  *Id*.

Here, Jones has attempted to force the Class Members to make a choice based on false information: participate in the Plaintiffs' settlement or lose $500,000,000.00.  Worse, Jones has stated his intention to continue to give deceptive information to the Class Members all while interfering with the Court's jurisdiction to oversee communications with the Class Members.  If this conduct persists, the Court should sanction both Jones and his Counsel.

**D.  Alternatively, the Court should order Jones to produce copies of all communications with Class Members and to appear for a deposition within 14 days to allow Plaintiffs' Counsel to investigate further violations of the law committed by Jones.**

If the Court is not inclined to grant the (1) corrective notice sought by Plaintiffs, and (2) enjoin Jones and his Counsel from initiating any communication with the Class Members, Plaintiffs respectfully ask that the Court order Jones to do the following:

- Produce true and correct copies of all communications with Class Members pertaining to any claim raised in Plaintiffs' lawsuit within seven days;

- Produce copies of any and all damage calculations prepared by his purported expert; and

- Appear for a deposition within 14 days.

This discovery limited in scope and is designed solely to gather information directed at the improper conduct committed by Jones.  Plaintiffs will then supplement this Motion with the additional information acquired so that the Court can make an informed decision.

10

## CONCLUSION

For the foregoing reasons Plaintiffs respectfully request that the Court grant this Emergency Motion to Enjoin Fletcher Joins and his Counsel.

Date: April 27, 2026                                    Respectfully submitted,

*/s/ Andrew H. Turner*
Andrew H. Turner
Brandt Milstein
MILSTEIN TURNER, PLLC
2400 Broadway, Suite B
Boulder, CO
(303) 305-8230
andrew@milsteinturner.com
brandt@milsteinturner.com

*/s/ Matthew S. Parmet*
Matthew S. Parmet, Atty Reg. # 53046
PARMET LAW PC
2 Greenway Plaza, Ste. 250
Houston, TX 77046
(713) 999-5200
matt@parmet.law

*/s/ Don J. Foty*
Don J. Foty, Texas Bar No. 24050022
FOTY LAW GROUP, P.C.
2 Greenway Plaza, Suite 250
Houston, Texas 77046
(713) 523-0001
dfoty@fotylawgroup.com

**Class Counsel for Plaintiffs**

11

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing document on Defendants by electronically filing with the Clerk of Court, using the CM/ECF system which will send notification of such filing to the all counsel of record *via* e-mail.

This 27th day of April, 2026.

/s/ Don J. Foty
Class Counsel for Plaintiffs